*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Q. HOLLINS, Minor.

UNPUBLISHED
March 21, 2024

No. 367302
Calhoun Circuit Court
Family Division
LC No. 2010-003126-NA

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court order terminating her parental rights to the minor child, QH. We affirm.

## I. BACKGROUND

In July 2022, respondent contacted Children's Protective Services (CPS) and reported that she was suicidal and admitted she had fired "a round" at a neighbor's house. The Michigan Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over QH under MCL 712A.2(b)(1) and (2), and terminate respondent's parental rights to QH. The DHHS obtained an ex parte order to take the child into protective custody "due to concerns of mental health, physical neglect, physical abuse, and lack of proper care and custody." QH was placed in foster care, and respondent was placed in a psychiatric facility for mental-health treatment. At the preliminary hearing, respondent consented to the court taking jurisdiction over the minor child, but the father did not. Following testimony from a CPS supervisor, the trial court found by a preponderance of the evidence that it had jurisdiction over QH pursuant to MCL 712A.2(b)(1) and (2). The child's foster-care placement was continued, the

---

[1] The petition in this case also named QH's father and requested that QH be removed from the parents' custody, but did not request termination of the father's rights. Following adjudication, the petition was dismissed as to the father, and the father is not a party to this appeal. Accordingly, we simply refer to respondent-mother as "respondent" and the father as "the father."

-1-

father's parenting time was ordered to be supervised, and the mother's parenting time was left to the DHHS's discretion.

In August 2022, respondent entered a plea of admission to certain allegations in the petition. She admitted to being QH's biological mother, QH's date of birth, the identity of QH's father, and the father's last known address. Respondent also admitted to a CPS history of six substantiated charges for physical neglect, threatened harm, and physical abuse. She admitted to being on the Central Registry. She further admitted that her two oldest sons were removed from her care in 2010, returned to her care in 2012, removed again in 2014, and her rights to both of her oldest sons were ultimately terminated in 2014. Respondent admitted that CPS had been working with her regarding QH since January 2022. She also admitted that she threatened suicide and to burn down a DHHS building in July 2022. She further admitted that she needed mental health services. And in exchange for the DHHS withdrawing its request for termination at the initial disposition, respondent admitted that she called CPS in July 2022 reported that her son was upset because she fired a round from her gun at her neighbor's home.

In September 2022, the trial court authorized the supplemental petition to remove the father as a respondent and QH was returned to the care of the father. Shortly thereafter, the DHHS filed an emergency, ex parte motion to suspend respondent's visitation, which the trial court temporarily granted pending a motion hearing. At the hearing, the foster-care worker described respondent's inappropriate behavior during parenting time and the "extreme behavioral concerns" that the child demonstrated after respondent's visitations, including defecating on himself and self-harming. Because the court determined that parenting time with respondent posed a serious risk of emotional, mental and physical harm to QH, it suspended respondent's parenting time until further court order.

In April 2023, the DHHS filed a supplemental petition seeking termination of respondent's parental rights to QH under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (i) (parental rights to one or more siblings terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful), and (j) (reasonable likelihood that child will be harmed if returned to parent).

The foster-care worker testified at the termination hearing that respondent was not attending or following up with services offered, such as parenting classes, psychological evaluations, and counseling services. Respondent testified that she was homeless and unemployed, but that she was looking for housing and work, and that she was attending mental-health classes biweekly at the Mental Health Court. The trial court found that there was clear and convincing evidence that respondent's parental rights to QH should be terminated under MCL 712A.19b(3)(b)(*i*) (parent caused physical injury to a sibling of child), (c)(*i*), (i), and (j). The trial court found by a preponderance of the evidence that it was in QH's best interests to terminate respondent's parental rights. This appeal followed.

II. STANDARDS OF REVIEW

We review a trial court's factual findings regarding statutory grounds for termination of parental rights and the decision to terminate parental rights for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). We also review a trial court's decision that

termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

## III. STATUTORY GROUNDS

Respondent-mother argues that the trial court erred by finding statutory grounds for termination. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (cleaned up). If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (c)(*i*), (i), and (j). Respondent does not argue that the statutory grounds for termination were not proved by clear and convincing evidence. Instead, she makes a general argument that there was insufficient evidence that she had hurt the child, and she should have been afforded additional time to obtain mental health services and medications. Notably, respondent does not challenge the trial court's finding that termination was supported under MCL 712A.19b(3)(i), which authorizes a trial court to terminate a parent's parental rights to a child if the court finds by clear and convincing evidence that "[parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights." It is undisputed that respondent's parental rights to her two oldest sons were involuntarily terminated in 2014 after neglect or abuse. And the record reflects that services have been offered to respondent since 2010, but respondent failed to rectify the issues that led to those prior terminations. Respondent had ample time to make changes and take advantage of a variety of services that were available, but failed to do so. Accordingly, we are not left with a definite and firm conviction that a mistake has been made in finding that termination was proper under MCL 712A.19b(3)(i). Because termination of parental rights only needs to be supported by a single statutory ground, *In re Pederson*, 331 Mich App at 472, we need not address the remaining grounds for termination, *In re Foster*, 285 Mich App at 633.[2]

## IV. BEST INTERESTS

Respondent also argues that the trial court clearly erred by finding that termination of her parental rights was in QH's best interests. We disagree.

---

[2] We note that, regardless, the record supports that the trial court did not clearly err by finding clear and convincing evidence that the remaining statutory grounds were met.

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court may also consider a parent's substance abuse problems. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). Finally, because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts*, 297 Mich App at 43.

In this case, the trial court found that granting sole custody to father alone would not be enough to protect QH because "the bond [between respondent and QH] clearly is severed." The court noted that respondent's visitations were stopped based upon QH's "visceral reaction" to parenting time with respondent, respondent's abusiveness during parenting time, and because QH "resorted to physical harming himself" after contact with respondent. Recognizing that QH "craves, strives, and benefits from consistency and stability," the court concluded that if QH knew that future contact was even a possibility, he may resort to the same behaviors and thus "a custody order in and of itself would not be sufficient. This child is at risk, and it is in the child's best interests to terminate parental rights." A preponderance of the evidence in the record supports that respondent has subjected QH to mental abuse during parenting time, has failed to address her mental health issues for more than a decade, and had not shown motivation to make the necessary changes to address those issues. Because of QH's need for permanency, stability, and finality, QH cannot wait for respondent to seek treatment. We conclude that the trial court did not clearing err by finding that termination was in the best interests of QH.

Affirmed.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

-4-